No. 2--05--0532                                      filed: 12/6/06

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 04--CF--1868 |
| GULMARO H. CALDERON, | ) ) ) | Honorable Timothy Q. Sheldon, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BOWMAN delivered the opinion of the court:

Defendant, Gulmaro H. Calderon, was convicted of aggravated battery with a firearm (720 ILCS 5/12--4.2(a)(1) (West 2004)) and sentenced to 10 years' imprisonment. On appeal, defendant argues that the trial court erred by: (1) granting the State's motion in limine to restrict his impeachment of the victim; (2) allowing evidence of the victim's prior photo identification of defendant even though the victim failed to identify defendant in court; (3) allowing the victim's brother to make an in-court identification of defendant when the brother had not previously made an identification and had told the police that he could not make an identification; (4) not allowing defendant to call a rebuttal witness because he was not on defendant's list of witnesses; (5) not allowing defendant to rehabilitate a witness through a prior consistent statement made to the police; (6) allowing an accountability instruction; and (7) allowing improper argument by the State. We affirm.

I. BACKGROUND

On January 7, 2005, defendant was charged with three counts of attempted first-degree murder (720 ILCS 5/8--4(a), 9--1(a)(1) (West 2004)), one count of aggravated battery with a firearm (720 ILCS 5/12--4.2(a)(1) (West 2004)), and one count of aggravated discharge of a firearm (720 ILCS 5/24--1.2(a)(2) (West 2004)).  On February 22, 2005, the State nol-prossed two counts of attempted first-degree murder and the charge of aggravated discharge of a firearm.  Defendant's trial began the same day.

Chad Conway testified as follows.  On September 24, 2004, at about 8 p.m., he went to a party at a friend's house in Carpentersville.  While there, he consumed some beers and a couple of mixed drinks.  After about 1½ hours, Chad returned home to get money for cigarettes.  His brother, Phillip, and his brother's girlfriend, Kim, decided to go back with him to the party.  They took Chad's car.  Chad sat in the driver's seat, Phillip sat in the front passenger seat, and Kim sat in the backseat.  On the way to the party, Chad saw two girls walking down the street, and he thought that he recognized them from the party.  He pulled over and exited the car to talk to them.  Phillip and Kim remained in the car.  Two young Hispanic men walked up to Chad and the girls.  They asked Chad why he was talking to their "girlfriends or ex-girlfriends, or whatever they were."  Chad responded, "because I can."  An argument ensued between Chad and the men.  When asked at trial whether he saw "any one of those two Latino gentlemen in court," Chad replied, "No, I don't."

Chad further testified that he wanted to fight the men, but they did not want to fight.  Chad did not take any physical action against the men, nor did he clench his fists or lunge toward them.  Chad did not have a gun or any other type of weapon with him.  The men went into a house and then came back out.  They got into a van, and the van pulled out of the driveway.  Chad saw a weapon

-2-

in "his" hands. Chad was standing in the street by his car, and he heard gunshots. The shots came from the front passenger seat of the van. He heard "them" say " 'I ain't afraid of no gun,' " and a bullet hit him in the stomach. The van drove away. Phillip helped Chad to the car and drove him to the hospital. Chad remained hospitalized for two weeks and had to undergo many surgeries. While he was in the hospital, the police showed him some photographs. At the time of trial, Chad's physical condition was still suffering from the shooting. The bullet was never removed from his body because it was too close to his spine.

Chad admitted that he had a 2001 conviction of aggravated battery, for which he was sentenced to boot camp. He did not recall some specifics of the night in question, such as the time or whether he was in the street when he got shot, because of his consumption of alcohol.

Officer Timothy Bosshart provided the following testimony. He had been employed by the Carpentersville police department for 19 years, and he had been working as a detective sergeant for the previous three years. Officer Bosshart was involved in investigating the shooting at issue, and he put together a photo lineup.

At this point in the testimony, defendant objected. He argued that because Chad had failed to identify defendant as the shooter in open court, the State could not bring in testimony of a previous identification through a photo lineup. The trial court overruled defendant's objection.

Officer Bosshart then identified the photo lineup that he showed to Chad on September 30, 2004. He instructed Chad not to assume that the suspect was among the photographs and that, if he did not recognize anyone, he should say so. The photographs consisted of paper copies that were folded in half because the bottoms of the pages had the subjects' names. Officer Bosshart laid the

photos out on the hospital bed. Chad immediately pointed to a photo of defendant and said, " 'That looks like the guy that shot me.' " Chad signed the photograph that he identified.

Phillip Rosenbach, Chad's brother, testified as follows. On September 24, 2004, Chad came home at about 10:30 p.m. He asked Phillip and Kim to accompany him to a party, and they agreed. Chad drove, with Phillip in the passenger seat and Kim in the backseat. As they were driving west on Amarillo Drive, they saw two girls walking on the sidewalk. Chad rolled down the window on Phillip's side of the car and started talking to them and flirting. They continued walking, and Chad continued driving. After about half a block, the girls stopped. Chad got out of the car and went over to the sidewalk to talk to the girls. It was about 10:30 or 10:40 p.m. It was dark outside, but there was a streetlight. Phillip had to twist around in his seat to see what was going on.

A Hispanic man came out of a house and confronted Chad, asking who he was. One or two other Hispanic men were also present. Chad and the man argued. The man swore and, in an aggressive manner, asked Chad to leave. Chad swore back at him. The man pulled out a gun, and the other people clustered around him and told him to stop. The man shot once into the air. Over defendant's objection, Phillip identified defendant as the man who shot the gun. Chad was in the driveway when defendant shot the gun into the air. They continued to argue. Chad said, "you are not going to shoot me, you are nothing but a punk, put the gun down and let's fight." Defendant shot the gun to Chad's left. Chad continued to argue. The men and the girls got into a van, with defendant entering the front passenger door. Chad walked behind the van and continued to argue and yell. The van backed out and began to pull away, traveling west. Chad was in the middle of the street and began to walk behind the van. At some point while the van was backing out, he also went to his car's trunk. Chad called the men a bunch of "pussies" because they would not fight him.

Defendant reached out of the passenger side and shot at Chad, striking him. At this point, the van was 15 to 20 feet in front of Chad's car, and Phillip had a "pretty good view" of defendant's face as the van drove past him. The illumination from a streetlight and the moonlight enabled him to identify defendant. The van then drove away. Chad dropped to the ground, and Phillip picked him up and took him to the hospital. Chad did not appear intoxicated that night, but Phillip had smelled alcohol on him.

Phillip admitted that six days after the incident, he "possibly" told a police officer that he would not be able to pick the offender out of a photo lineup because he had been in the car the entire time.

Detective Todd Shaver testified that on October 1, 2004, he took a statement from Phillip. He did not offer Phillip an opportunity to view individuals in a photo lineup. Phillip told him that he would not be able to pick the offender from a photo lineup because Phillip was in the car the entire time.

Amber Lavender provided the following testimony. She was in eleventh grade and lived on Amarillo Drive. Amber had dated defendant for four months, beginning in August 2003. On September 24, 2004, she was at her friend Stephanie's house. Stephanie lived on the same block. They decided to go to defendant's house because a friend of Stephanie's had invited them over. As they were walking, they could see defendant in front of a van, which was parked in the driveway. Defendant had driven the van on many occasions. Defendant's younger brother Fernando and defendant's friend Eric were also there. As Amber and Stephanie were walking, a car pulled up next to them and the driver started talking to Stephanie. He told Stephanie that he would give her $100

"if she told him where the parties were at." There were two other people in the car, and Amber recognized Kim from school.

Amber and Stephanie stopped on the sidewalk in front of defendant's house, and the driver parked the car a little past the house. The driver got out of the car and talked to Stephanie. Eric approached the man, and they started talking. Amber and Stephanie walked to the side door of the house. The house's side light was on, and there was also a streetlight four or five houses away from defendant's house. Amber heard someone say, "Get the strap, get the strap." "Strap" meant gun. Amber and Stephanie walked back to the sidewalk, behind the van. They saw defendant run to the van's driver-side door. Defendant walked back toward the man and shot a gun into the air. He then fired a second shot. Amber and Stephanie ran to Stephanie's house. From the time the man got out of the vehicle to the time defendant fired the shots, about two minutes had passed. Amber never saw anything in the man's hands, and he did not make any movements toward defendant. She also never saw defendant on the passenger side of the van.

Amber identified a photograph, taken in an eastern direction, showing the street in front of defendant's house. She agreed that the photo showed streetlights. She then identified another photograph, taken in a western direction, showing the street in front of defendant's house. She agreed that the second photograph did not show any streetlights and that no streetlights were actually present there. Amber testified that there were streetlights at both ends of the street, but that there were no streetlights in a western direction from defendant's house that were visible from his house. There were about nine houses between defendant's house and the western end of the block. At that end of the block, the streetlight was around the corner, and it did not illuminate the street in front of defendant's house.

The defense moved for a directed verdict, and the trial court denied the motion. The defense then called Javier Huerta to the stand. The State objected because Javier was not included on defendant's list of witnesses. Defendant argued that he was calling Javier as a rebuttal witness to testify that there were no streetlights on Amarillo Drive. The trial court sustained the State's objection. It further stated that defendant was not prejudiced because he could elicit that testimony from witnesses on the list.

Fernando Huerta, defendant's brother, testified as follows. He lived in Michigan, but he was at his uncle's house in Carpentersville on the night of September 24, 2004. At about 10:30 p.m., he was with defendant and Eric in front of the house. They were going to go to Eric's house, but a car came into the driveway. Defendant told the driver to move, but instead, the man got out of his car. Fernando did not know the man, but he knew the man was called "Casper D." The man started arguing with Eric, and defendant told Fernando to grab a stick. Fernando got a bamboo stick and gave it to defendant. He wanted to protect his brother because he thought there was going to be a fight. However, the man never swung at Eric or defendant.

Fernando then testified that defendant had sent him to grab a bat from the back of the garage. He could not find a bat, so Eric came and grabbed the bat and took it. Eric also grabbed a gun from the back of the garage and loaded it with three bullets. Eric pointed the gun at the man. Defendant told him not to shoot the man but to shoot into the air instead. The man went to the trunk of his car and looked for something. He closed the trunk and walked to the side of the car. Defendant told Fernando and Eric that they should go because the man would not leave. The van belonged to defendant, and defendant got into the driver's side of the vehicle while Eric sat in the passenger seat. Fernando sat in the back. As they were driving away, Eric "got out of the window" and shot the man.

-7-

Fernando admitted that he had initially told the police that he was at Eric's house between 9:30 p.m. and 1 a.m. He had lied because he was scared. He agreed that he loved defendant and did not want anything bad to happen to him. However, Fernando denied that he would lie again to protect defendant. Fernando admitted that the second time he talked to the police, he told them that Chad said bad words to both defendant and Eric. At trial, he stated that Chad was arguing with Eric and that defendant had asked him to get a stick. Fernando admitted that a statement he signed also stated that Chad argued with both defendant and Eric. The statement additionally said that it was at that point that defendant told Chad to get out of the driveway, and that Fernando then got the bamboo stick. According to the statement, defendant told him to get back into the van, and Fernando lay down in the van and heard two gunshots. At trial, Fernando testified that the statement was not true. However, he admitted that he never told the police that defendant did not shoot Chad.

During the jury instruction conference, defendant objected to an accountability instruction. He argued that the trial court should not allow the instruction because the State had proceeded on a theory that defendant had shot the victim. The trial court allowed the instruction. The jury found defendant not guilty of attempted first-degree murder and guilty of aggravated battery with a firearm. The trial court denied defendant's motion for a new trial. Defendant was sentenced to 10 years' imprisonment, and he timely appealed.

## II. ANALYSIS

### A. Evidence of Chad's Criminal History

Defendant first argues that the trial court erred by prohibiting him from introducing evidence of all three of Chad's prior felony convictions for impeachment purposes. Defendant maintains that this impeachment evidence should have been allowed because Chad's testimony played a critical role

in defendant's conviction. Chad had a 2001 conviction of aggravated battery, a 1999 conviction of unlawful possession of a weapon by a felon, and a 1999 conviction of burglary. He also had several misdemeanor convictions of battery, domestic battery, and resisting arrest. Before trial, the State filed a motion in limine to prevent defendant from using the convictions to impeach Chad. The trial court allowed the admission of only Chad's most recent felony conviction, ruling that the prejudicial effect of allowing evidence of the other convictions would outweigh its probative value.

Under People v. Montgomery, 47 Ill. 2d 510, 516-19 (1971), evidence of a witness's prior conviction is admissible to attack his credibility only if: (1) the conviction involved a crime punishable by death or imprisonment of over one year, or involved dishonesty or false statement regardless of punishment; (2) not more than 10 years have passed since the date of conviction or the release of the witness from confinement, whichever is later; and (3) the probative value of admitting the conviction outweighs the danger of unfair prejudice. See also People v. Atkinson, 186 Ill. 2d 450, 455-56 (1999) (discussing Montgomery standard). Whether a witness's prior conviction is admissible for impeachment purposes is within the trial court's discretion. Atkinson, 186 Ill. 2d at 456.

In this case, the trial court allowed evidence of Chad's most recent felony conviction because it related to "his credibility and reliability." The trial court also determined that the prejudicial effect of allowing evidence of additional felony convictions would outweigh its probative value. We conclude that the trial court did not abuse its discretion by allowing evidence of only the most recent conviction, as such evidence was sufficient to question Chad's credibility without overemphasizing his criminal history. See also People v. Sparks, 314 Ill. App. 3d 268, 270-71 (2000) (trial court, which refused to allow evidence of two of the defendant's three prior felony convictions because it

found that one conviction was sufficient to impeach the defendant's credibility, acted within its discretion in allowing evidence of the most recent conviction).

### B. Chad's Prior Photo Identification of Defendant

Defendant next argues that the trial court erred by allowing evidence of Chad's prior photo identification of defendant after Chad failed to identify defendant in court. Defendant argues that the exception provided for such testimony under section 115--12 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115--12 (West 2004)) does not apply because Chad was not subjected to cross-examination concerning the prior photo identification. Defendant maintains that it was impossible for him to cross-examine Chad regarding the identification because Chad had been withdrawn from the stand by the State before the identification testimony was presented through Officer Bosshart.

Section 115--12 provides:

"A statement is not rendered inadmissible by the hearsay rule if (a) the declarant testifies at the trial or hearing, and (b) the declarant is subject to cross-examination concerning the statement, and (c) the statement is one of identification of a person made after perceiving him." 725 ILCS 5/115--12 (West 2004).

Statutory interpretation presents a question of law, which we review de novo. People v. Cosenza, 215 Ill. 2d 308, 314 (2005).

In People v. Bradley, 336 Ill. App. 3d 62, 70 (2002), the First District held that before a third person is permitted to testify regarding a witness's out-of-court identification statement, the witness must first testify as to the out-of-court identification. Thus, the Bradley court concluded that a police officer's testimony regarding the victim's identification of the defendant through a photo array was

inadmissible because the victim had not yet testified about the identification, nor had the victim been subject to cross-examination regarding the identification. Bradley, 336 Ill. App. 3d at 70. Relying on Bradley, the First District stated in People v. Stackhouse, 354 Ill. App. 3d 265, 278 (2004), "The section [115--12] does *** require the declarant to testify and be subject to cross-examination regarding the out-of-court identification statement before a third party may testify to the making of such a prior statement of identification by the declarant." (Emphasis in original.) The Stackhouse court held that where the victim denied previously identifying the defendant, a police officer's testimony that the victim had identified both offenders at the scene was inadmissible hearsay. Stackhouse, 354 Ill. App. 3d at 278-79.

Under such reasoning, evidence of Chad's photo identification would not have been admissible because, although he testified that he was shown a photo array, he did not testify regarding his prior identification of defendant and was not subject to cross-examination about this subject before Officer Bosshart testified about the identification. However, the reasoning of Bradley and Stackhouse was strongly criticized by the Fourth District in People v. Lewis, 361 Ill. App. 3d 1006 (2005). The Lewis court noted that the plain language of section 115--12 does not require that the declarant testify about the identification before the third party testifies about the subject. Lewis, 361 Ill. App. 3d at 1012-13. It further noted that two of the three cases relied on by the Bradley court were decided before the enactment of section 115--12, and that the third case lacked any analysis on the subject. The Lewis court also conducted an in-depth analysis of the authority relied on in Stackhouse and concluded that such analysis was flawed. Lewis, 361 Ill. App. 3d at 1013-17. Finally, the court discussed Federal Rule of Evidence 801(d)(1)(C), which contains requirements that are almost identical to those of section 115--12, in support of its interpretation of the statute. Lewis, 361 Ill. App. 3d at 1017-1019.

We agree with the <u>Lewis</u> court that the plain language of section 115--12 does not require that a declarant testify about his out-of-court identification, and be subject to cross-examination regarding this testimony, <u>before</u> a third party may testify about the identification. We also find the court's in-depth analysis on this subject persuasive. Thus, the fact that Chad did not testify about the photo identification before Officer Bosshart testified about the subject does not automatically render the identification testimony inadmissible. Although defendant contends that it was subsequently "impossible" to cross-examine Chad on this subject, there is no indication in the record that defendant asked to re-call Chad to the stand for this purpose. In fact, as the State points out, in response to defendant's objection that Officer Bosshart could not testify regarding the instructions on the lineup advisory form because Chad had not testified that he had been shown the form and understood the instructions, the trial court stated, "He's here, subject to cross-examination; overruled." Accordingly, the trial court did not err by allowing Officer Bosshart to testify regarding Chad's photo identification of defendant.

C. Phillip's Identification of Defendant

Third, defendant argues that the trial court erred by allowing Phillip to identify defendant in court as the person who shot Chad. We will not reverse a trial court's ruling on the admissibility of evidence absent an abuse of discretion. <u>People v. Tenney</u>, 205 Ill. 2d 411, 436 (2002). Defendant argues that the identification procedure was automatically suggestive because he was seated at the defense table. However, our supreme court has held that an in-court identification of a defendant, on its own, does not violate due process. <u>People ex rel. Blassick v. Callahan</u>, 50 Ill. 2d 330, 334-35 (1972); see also <u>People v. Rodriguez</u>, 134 Ill. App. 3d 582, 589 (1985) (absent extrajudicial suggestiveness, suggestiveness at trial does not offend due process because the trial itself, especially

the ability for cross-examination, affords the defendant adequate protection); People v. Patterson, 88 Ill. App. 3d 168, 176 (1980) (the "prosecution is not required to fill the courtroom with individuals who resemble the defendant in order to insure a proper identification").

Defendant further maintains that Phillip's identification of defendant should not have been allowed because Phillip did not see defendant during the five months between the incident and the trial, Phillip told the police that he would not be able to pick the offender from a photo lineup because he was in the car the entire time, and he "fabricated" testimony regarding streetlights that allowed him to identify defendant. Defendant argues that the court should have examined the following factors when determining whether the reliability of the identification testimony allowed its admission: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and confrontation. See People v. Slim, 127 Ill. 2d 302, 307-08 (1989) (noting that such factors are used to assess identification testimony); see also People v. Smith, 165 Ill. App. 3d 905, 909-10 (1988) (applying these factors to determine admissibility of in-court identification).

Applying the factors to the instant case, we observe that Phillip testified that he watched the encounter between Chad and defendant while he was seated in Chad's car. He further testified that as the van drove past him, a streetlight and the moonlight enabled him to get a "pretty good view" of defendant's face. Although defendant maintains that Phillip made up the testimony regarding a streetlight, it is up to the jury to resolve conflicts in the evidence. People v. Evans, 209 Ill. 2d 194, 212 (2004). About five months passed between the incident and the trial, which, while not a short amount of time, was not extraordinarily long either. Defendant's main emphasis seems to be on the

fact that Phillip initially told the police that he would not be able to identify the shooter. However, this would not automatically render his in-court identification inadmissible because "as a matter of law, a victim's or witness' inability to identify a defendant subsequently to, even soon after, the commission of the offense charged does not render incompetent and inadmissible his identification of the defendant at a later lineup or an even later trial." People v. Maloney, 201 Ill. App. 3d 599, 609 (1990). It is presumptively up to the trier of fact to determine the weight to be given to identification evidence. People v. Ramos, 339 Ill. App. 3d 891, 897 (2003). Defendant was able to cross-examine Phillip regarding his identification, and he also impeached Phillip by calling Detective Shaver, who testified that on October 1, 2004, Phillip told him that he would not be able to pick the offender from a photo lineup because he was in the car the entire time. Accordingly, the trial court did not abuse its discretion by allowing Phillip's in-court identification of defendant.

### D. Ability to Call Rebuttal Witness

Fourth, defendant argues that the trial court's refusal to allow him to call Javier Huerta as a witness constituted reversible error. The trial court barred Javier from testifying because he was not disclosed as a witness on defendant's list of witnesses. Under Supreme Court Rule 413(d)(i) (134 Ill. 2d R. 413(d)(i)), defense counsel must disclose, upon the State's request, the names and addresses of the people he "intends" to call as witnesses. We believe that this rule does not generally extend to rebuttal witnesses, as a defendant may not be aware of the need to call such witnesses until after the trial commences. Cf. 725 ILCS 5/114--9(c) (West 2004) (State not required to disclose names of rebuttal witnesses). Accordingly, the trial court erred by excluding Javier on the ground that he was not previously disclosed as a defense witness.

Defendant argues that the exclusion was prejudicial because other witnesses from whom he could have elicited testimony regarding the streetlights were limited as to their credibility, interest, and bias. We disagree, as Amber appeared to be a neutral witness. Although she had dated defendant for several months, she testified that she saw him shoot the gun into the air and that she did not see who shot Chad. Defense counsel questioned her extensively about the streetlights on Amarillo Drive, and she agreed that there were no such lights in front of defendant's house or to the west of the house. Furthermore, photographs of the street were admitted into evidence. The photographs show streetlights at the far end of the eastern side of the block, and no visible streetlights on the western side of the block. As Javier's testimony would have been cumulative of other admitted evidence, any error in the trial court's refusal to allow such testimony was harmless. See People v. Hernandez, 332 Ill. App. 3d 343, 352 (2002) (excluded testimony was cumulative of other evidence, making any "potentially perceived" error harmless).

### E. Fernando's Prior Consistent Statement

Next, defendant argues that the trial court erred by not allowing him to rehabilitate Fernando through a prior consistent statement he made to police. On direct examination, Fernando testified that Eric shot Chad from the passenger side of the van and that defendant was driving the vehicle. On cross-examination, Fernando admitted to inconsistencies between his current testimony and what he had previously told the police. In particular, the State questioned him about inconsistencies in a written statement that he had given the police. Fernando admitted to lying in the statement. On re-direct, defendant sought to elicit testimony that Fernando's claim that Eric was seated in the passenger's side of the van was consistent with the information Fernando had provided in his written statement. The following exchange occurred:

"Q. Did you make a statement to the police about who got into the driver's side and who got into the passenger side of the van?

A. Yes, I did.

Q. Who got into the driver's side?

A. [Defendant.]

Q. And who got into the passenger side?

A. Eric.

Q. And you told the police that when you gave them this written statement?"

The State objected on the ground that such testimony would constitute a prior consistent statement, and the trial court sustained the objection.

The State contends that defendant waived this argument by failing to make an offer of proof. We disagree, as an offer of proof is not required where the trial court understood the nature and character of the evidence sought to be introduced, or where the question itself and the surrounding circumstances show the purpose and materiality of the evidence. People v. Quinn, 332 Ill. App. 3d 40, 44 (2002). Here, it is clear that defendant sought to elicit testimony that Fernando had previously told the police that defendant drove the van while Eric sat in the front passenger seat. Accordingly, defendant did not have to make an offer of proof.

A witness's prior consistent statement is hearsay and inadmissible to bolster the witness's trial testimony. People v. Richardson, 348 Ill. App. 3d 796, 802 (2004). Where a witness is impeached through a prior inconsistent statement, a consistent statement is not admissible unless it disproves or explains the making of the inconsistent statement. See People v. Williams, 147 Ill. 2d 173, 227 (1991). A consistent statement is also admissible when it is suggested that the witness recently

fabricated the testimony or had a motive to testify falsely, and the prior statement was made before the motive to fabricate arose. People v. Ursery, 364 Ill. App. 3d 680, 687 (2006). A prior consistent statement is not admissible merely because a witness was discredited or impeached. Richardson, 348 Ill. App. 3d at 802.

In this case, Fernando admitted that his written statement to the police said, among other things, that Chad argued with both defendant and Eric and that Fernando was lying down in the back of the van when he heard two gunshots. Fernando's prior consistent statement that Eric was seated in the passenger side of the van did not disprove or explain the inconsistent statements. The prior statement was also not made before the motive to fabricate arose, as Fernando himself testified that other parts of the statement were untrue. Accordingly, as the testimony does not fit within the exceptions under which a prior consistent statement is admissible, the trial court did not abuse its discretion in sustaining the State's objection to the testimony.

### F. Accountability Instruction

Sixth, defendant argues that the trial court erred by giving the State's jury instructions on accountability. According to defendant, such instructions were improper because all of the evidence offered by the State was directed toward proving that defendant was the shooter.

A person is legally accountable for the conduct of another when "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." 720 ILCS 5/5--2(c) (West 2004). Evidence of accountability may be circumstantial. People v. Beltran, 327 Ill. App. 3d 685, 693 (2002). Even the slightest evidence supporting an accountability theory justifies providing the jury with an accountability instruction. People v. Testa,

261 Ill. App. 3d 1025, 1030 (1994). Some accountability evidence, along with evidence that the defendant acted as a principal, is sufficient to support an instruction on each theory, even if the State advanced only one theory in its case in chief. Beltran, 327 Ill. App. 3d at 692. We will not reverse a trial court's decision to issue a jury instruction absent an abuse of discretion. Beltran, 327 Ill. App. 3d at 692.

Here, Amber testified that she saw defendant go to the driver's side of the van, walk back toward Chad, and fire two shots into the air. Amber did not see what occurred afterwards. Phillip testified that defendant fired the gun once into the air and once next to Chad, and he also identified defendant as the man who shot Chad from the passenger side of the van. Fernando testified that Eric grabbed the gun from the garage, and, upon defendant's urging, initially fired the gun into the air rather than at Chad. Fernando further testified that the van belonged to defendant and that Eric shot Chad while defendant was driving away. Based on this evidence, the jury could have concluded that defendant intended to assist Eric in shooting Chad, either by handing him the gun or driving the van. Therefore, the trial court did not abuse its discretion by allowing jury instructions on accountability.

### G. State's Closing Argument

Last, defendant argues that the trial court erred by allowing improper argument in the State's closing remarks. Defendant maintains that the prosecution misstated evidence and argued facts not in evidence. Prosecutors have wide latitude in closing arguments and may comment on the evidence and any reasonable inferences arising from the evidence. People v. Nicholas, 218 Ill. 2d 104, 121 (2005). We consider statements in the context of the closing arguments as a whole. People v. Hopkins, 363 Ill. App. 3d 971, 987 (2005). Even if the prosecutor's comments exceed the bounds of proper comment, we will not disturb the jury's verdict unless the remarks resulted in such

substantial prejudice that the verdict would otherwise have been different. People v. Ligon, 365 Ill.

App. 3d 109, 123 (2006). We examine each of the alleged errors, all of which took place during the

State's rebuttal argument, in turn.

First, defendant takes issue with the State's comment, referring to Fernando's testimony, that

"[i]t's only when he hits the stand, here, and he thinks, 'Oh God, I better put a gun in someone else's

hand,' you know, 'because I can't put a gun in my brother's hand because that's going to hurt him.' "

The State made this comment in response to defendant's theory implicating Eric as the shooter. A

witness's credibility is a proper focus of closing argument if it is based on the evidence or reasonable

inferences drawn from the evidence. People v. Dresher, 364 Ill. App. 3d 847, 859 (2006). Because

Fernando's trial testimony differed from what he had told the police, the trial court did not err by

overruling defendant's objection.

Next, defendant argues that the following remark was prejudicial: "No, if the gun is in the

garage, it's because the Defendant put it there, and the Defendant knows where it is." As the trial

court sustained defendant's objection to the statement, no prejudice resulted. See People v.

Desantiago, 365 Ill. App. 3d 855, 866 (2006).

Third, defendant argues that the State improperly remarked that, according to Phillip's

markings on a photograph of the scene, "Chad Conway's car is parked right here, the passenger side,

the front passenger side window of the car is facing the sidewalk, the shooter is three feet from it."

Defendant objected that the remark was a misstatement of Phillip's testimony regarding the location

of the shooter. The trial court overruled the objection but instructed the jury to "go over their

combined recollection of the facts adduced by all witnesses." Given that the jury was able to view

the photograph on which Phillip had marked the locations of the car and the shooter, we conclude that the trial court's ruling was not in error.

Fourth, defendant argues that the following comments were improper: "We do not know if the engine was running in Chad Conway's car, but it's dark out. Are the lights on? We certainly know that at some point in time--." Defendant objected on the ground that the witnesses were never asked if the car's lights were on. The trial court overruled the objection, stating that the jury could make inferences from the evidence. We agree that it would be a reasonable inference that, given the time of night, the car's lights would have been on at some point in time.

Fifth, defendant argues that the State's argument relating to the lineup procedure was improper. In response to defendant's closing remark that "[w]e do not know whether [Chad] was shown Eric Unzueta's photograph or who any of these other people in the lineup were," the State argued:

> "I urge you to examine this lineup, because as Detective Shaver testified *** the victim was shown the top half, not the bottom half. Why didn't they show the bottom half? Because their name is on the bottom half."

Defendant objected. The parties presented arguments on this issue outside of the jury's presence. The trial court ruled that because the full pages of the photographs had been admitted into evidence, and defendant had opened the door by saying that there was no information regarding whether Chad had seen Eric's picture, the State's comments were proper. The State then proceeded to argue to the jury that Fernando's picture was also included in the lineup. We agree with the trial court's reasoning that the State's comments were proper in light of the fact that the named pictures had been admitted into evidence and the fact that defendant had invited such a response when he stated that the identities

of the people in the lineup were unknown. See People v. Soto, 342 Ill. App. 3d 1005, 1016 (2003) (prosecutorial comments that are invited and not prejudicial do not constitute error).

Finally, defendant argues that the cumulative effect of the trial court's rulings was to deny him the right to a fair and impartial trial. However, where the individual alleged errors do not amount to reversible error, there is generally no cumulative error. Ligon, 365 Ill. App. 3d at 125. Furthermore, following closing arguments, the trial court instructed the jury that neither opening statements nor closing arguments were evidence, and that it should disregard any statement or argument made by the attorneys that was not based upon the evidence. See Desantiago, 365 Ill. App. 3d at 866 (such an instruction cures any alleged prejudice to the defendant from statements made during closing argument).

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the Kane County circuit court.

Affirmed.

GROMETER, P.J., and O'MALLEY, J., concur.