THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
VERNON SCOTT, Defendant-Appellant.

First District (5th Division)   No. 1—91—0508

Opinion filed November 19, 1993.

State Appellate Defender's Office, of Springfield, and Dennis M. Zitzer, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William Carroll, and Laura Morrison, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE GORDON delivered the opinion of the court:

BACKGROUND

Following a jury trial in the circuit court of Cook County, defendant, Vernon Scott, was convicted of two counts of possession of a controlled substance with intent to deliver, in violation of section 401

of the Controlled Substances Act (Ill. Rev. Stat. 1989, ch. 56¹/₂, par. 1401). Defendant was sentenced to 30 years in the Illinois Department of Corrections.

FACTS

Defendant was arrested on October 23, 1988, and was subsequently charged with two counts of possession of a controlled substance with intent to deliver. Count I charged defendant with possession of more than one gram, but not more than 15 grams of a substance containing cocaine with intent to deliver in violation of section 401(b)(2) (Ill. Rev. Stat. 1989, ch. 56¹/₂, par. 1401(b)(2)). Count II charged defendant with possession of 10 grams or less of a substance containing heroin with intent to deliver in violation of section 401(b)(1) (Ill. Rev. Stat. 1989, ch. 56¹/₂, par. 1401(b)(1)).

Defendant subsequently sustained a gunshot wound, and, as a result, he is permanently paralyzed below the waist. On November 30, 1989, the trial court was made aware of defendant's physical condition, and the case was continued because defendant was unable to appear. On June 28, 1990, neither defendant nor his attorney appeared in court. The trial judge ordered a bond forfeiture warrant and continued the case until July 9, 1990.

At the July 9, 1990, proceedings defendant's counsel explained that although defendant had been arrested on the bond forfeiture warrant and brought to the courthouse, the sheriffs were unable to bring him upstairs and into the courtroom because of his disability. The trial court nevertheless denied defendant's motion to vacate the order of bond forfeiture. At that time, the judge offered a 10-year sentence if defendant would agree to plead guilty by 1 that afternoon. That afternoon, defense counsel informed the court that defendant was not accepting the plea offer.

On August 16, 1990, defendant demanded a jury trial and trial was set for October 2, 1990. On October 2, the following colloquy occurred:

"THE COURT: He didn't want to accept my most generous offer?

MR. ZAYED (DEFENSE COUNSEL): Judge, no. We'll be answering ready for trial today, Judge.

THE COURT: All right, well, I think we'll set this for a regular jury calendar case on November 14th. Is this a super class X?

MR. MCAULIFF (PROSECUTOR): With the defendant's history.

THE COURT: He can go up to 60 years. I thought I was most generous in this matter. *** I guess we better put a jury in the box. *** Oh, well, terrible, terrible day for that. But we'll do it

when we get around to it. If we don't do it today, we'll do it tomorrow or the next day. We'll work it out, okay. *** You and I are going to be together for a week or two, okay.

MR. ZAYED: Is this because we're demanding, Judge?

THE COURT: No. See how many other cases I've got on my calendar.

MR. ZAYED: Certainly do.

THE COURT: Absolutely. We'll get to it. We'll hear a little bit here, little bit there, some somewhere here, some more here. We'll do it right around the rest of the call. Okay, I'm sure that we'll be able to finish it sometime.

MR. ZAYED: I'm sure we could dispose of the matter if we—

THE COURT: If common sense would prevail. *** Well, I think I'm pretty sensible and as reasonable as I'm going to be in this case. So just have a seat and don't get lost."

On October 3, the jury trial commenced. Officer Robert Delaney of the Chicago police department tactical unit testified that he had been a police officer for eight years. As part of his training he had been taught how drugs are packaged and sold on the streets. Shortly after 11 a.m. on October 23, 1988, Officer Delaney and a fellow officer, Joseph Barnes, both assigned to the tactical unit, were conducting surveillance from an unmarked car parked on the 100 block of North Parkside.

Officer Delaney testified, without objection, that he was familiar with the location because it was probably the main area for illegal drug sales in the district. Officer Delaney was allowed to testify, over defendant's objection, that a frequently used technique for selling narcotics in the area is that a drug dealer approaches a double-parked car, takes money from someone in the car, and "gives them their product which is drugs in this case."

Officer Delaney stated that, on that particular day, while he and his partner were parked on the block, he saw defendant standing with a young woman in front of 115 N. Parkside. He observed a car stop in front of that address. Defendant walked into the street and to the passenger side of the car. Officer Delaney saw defendant reach into an open car window; there was money in his hand when he withdrew it from the car. He put the money into his pocket then reached into the car with his other hand, giving over an object. The car then drove off. After this encounter, Officer Delaney observed another such encounter involving a second car.

After the second car departed, the officers drove up. Officer Delaney saw defendant, who had returned to the sidewalk, take a clear plastic baggie from his right jacket pocket. The baggie was rolled up and protruded about an inch from his hand. Defendant

transferred the baggie from his right hand to his left hand and then stuffed the baggie into his companion's jacket pocket. Officer Delaney testified that he could see there were smaller items inside the baggie, but he could not tell what was inside. The officers left their car and approached defendant and his companion. Officer Delaney removed the baggie from the companion's pocket. The baggie contained 12 clear plastic bags of white powder which Officer Delaney believed to be cocaine and 13 tin foil packets of white powder which he believed was heroin. Officer Delaney testified that these smaller packets were packaged the way cocaine and heroin are generally packaged for sale on the street. The officers then arrested defendant and his companion, who was a juvenile.

According to Officer Delaney, after defendant was advised of his *Miranda* rights, he stated that the drugs had been delivered by a man named Weasel Sims to Sims' middleman, Michael Love, from whom defendant received them. The officers found $76 in cash on defendant's person.

On cross-examination, Officer Delaney admitted he did not see defendant reach into his pocket for any object immediately before or after putting his hand in the car window and withdrawing the money. He could not see what was in defendant's other hand, which was then placed through the open window. He stated that defendant put the money into his pocket as the car drove away. When asked whether in his experience this was a drug transaction, he answered affirmatively. He could not remember whether the defendant and his companion were transported to the police station by him and Officer Barnes or by other officers called to the scene.

Officer Delaney was shown the vice case report which he signed shortly after the arrest. A vice case report is completed in addition to an arrest report in narcotics cases. Its purpose is to summarize events and to serve to refresh an officer's recollection in the future. The vice case report stated that defendant placed an "object" into his companion's pocket. After several questions regarding the reference to an "object" rather than a "baggie," the trial court intervened before any objection was raised, stating that, because a baggie is an object, the questions were not proper impeachment.

Officer Joseph Barnes also testified for the prosecution. He had been a police officer, specializing in narcotics investigations for $5^1/2$ years. Over defendant's objection, he testified that the area where defendant was arrested was the "highest narcotics area in the city at that time." He testified that he had made several hundred arrests for narcotics violations in that area. Officer Barnes testified, in variance from Officer Delaney's testimony, that defendant approached each

car, had a conversation with the occupants, then reached into his pocket, reached into the car with the same hand, pulled his hand back with money in it, counted the money, and placed it in his pocket as he walked away. He did not see what, if anything, was in defendant's hand when he reached into the car window.

Over defendant's objection, Officer Barnes testified that, in his opinion, this activity indicated a drug sale was taking place. He also testified that defendant told them he was just a "worker" for Weasel Sims and Michael Love. Defendant objected to testimony that Weasel Sims was the head of the drug organization, Michael Love was his right-hand man, and a "worker" is an actual street dealer. The court overruled the objection, noting that such testimony was relevant to explain the circumstances attending the arrest.

On cross-examination, Officer Barnes could not remember anything about the two cars except that he thought the first one was blue. He stated that the first car had two males in it. He could not recall how many people were in the second car. He stated that whenever he saw anyone approach a car in that area, he assumed that person was selling drugs. Officer Barnes was shown the vice case report completed shortly after the incident. It is unclear from the testimony which of the two officers actually prepared the report. The vice case report did not contain any reference to defendant being a "worker," but instead contained a statement that defendant and his companion had been waiting for friends and had no knowledge of drug sales in the area.

On redirect examination, Officer Barnes was shown the arrest report which he had completed. That report contained statements by defendant and his companion that they were merely "workers" for Weasel Sims and Michael Love.

A stipulation was entered into the record that the packets seized contained .7 grams of heroin and 2.9 grams of cocaine. The arrest report and the vice case report were among the exhibits admitted into evidence. The defense presented no witnesses.

At the conference on jury instructions, the court refused to give an instruction requested by defendant on the lesser included offense of possession of a controlled substance. The judge stated that giving such an instruction would result in a compromise verdict.

Although the arrest report was among the exhibits given to the jury, the vice case report was not. After the jury had retired, defense counsel moved to have the vice case report submitted to the jury. The trial judge denied the motion, stating that the police officers had testified regarding the contents of the report and to submit it to the jury after the other exhibits had been submitted would unduly highlight that exhibit.

The jury found defendant guilty on both counts. At the sentencing hearing, the State provided certified copies of defendant's three felony convictions in Illinois: a 1979 rape conviction, a 1983 attempted burglary conviction, and a 1985 burglary conviction, all of which were listed in the presentence investigation report. A copy of defendant's third-degree burglary conviction in Alabama was also submitted to the court.

Defendant's father and defendant's fiancee both testified in mitigation, stressing defendant's physical disability and their willingness to care for him. Defendant made a statement on his own behalf, expressing remorse. He stated that his confinement in a wheelchair had taught him a lesson and asked the judge to give him another chance.

The trial judge stated that he had reviewed the presentence investigation report which included defendant's felony convictions. He acknowledged that defendant's life expectancy had been shortened by his paraplegia. However, the judge had also commented that persons confined to wheelchairs are nevertheless capable of committing crimes. The judge sentenced defendant to 30 years in the Illinois Department of Corrections.

On appeal defendant contends that his conviction should be reversed because of several errors by the trial court, including (1) refusal to allow a jury instruction regarding the lesser included offense of possession of a controlled substance; (2) allowing the jury to have the arrest report during deliberations while refusing to allow the police vice case report to go to the jury; (3) improperly allowing certain testimony by the arresting officers and limiting impeachment of the officers; and (4) making comments which were prejudicial to defendant. Defendant also contends that he was prejudiced by the prosecutor's incorrect statements regarding the presumption of innocence. Lastly, defendant contends that his 30-year sentence is excessive and constitutes punishment for exercising his right to a trial. We reverse and remand for a new trial based on the court's failure to instruct the jury, as requested by defendant, regarding the lesser included offense of possession of a controlled substance.

OPINION

Defendant first contends that the trial court erred in refusing to give defendant's requested jury instruction on the lesser included offense of possession of a controlled substance. The trial judge stated that giving the instruction would have resulted in a compromise verdict.

As a general principle, to instruct the jury on a lesser included

offense and thereby permit a compromise verdict is reversible error if there is no evidentiary basis for the instruction. (*People v. Knieling* (1982), 111 Ill. App. 3d 102, 109, 443 N.E.3d 207.) In other words, to give an instruction on possession is error where the evidence supports only delivery or intent to deliver and the jury would only be justified in finding defendant guilty of the greater offense. (*People v. Valdez* (1992), 230 Ill. App. 3d 975, 985, 595 N.E.2d 1245.) However, due process requires that the jury be given a lesser included offense instruction when the evidence warrants such an instruction. (*People v. Enoch* (1988), 122 Ill. 2d 176, 200, 522 N.E.2d 1124, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.) A defendant is entitled to a lesser included offense instruction if there is any evidence tending to prove the lesser offense rather than the greater offense. (*People v. White* (1980), 86 Ill. App. 3d 19, 26, 407 N.E.2d 572.) The instruction is required where there is a question as to whether an element of the greater offense has been proved. *People v. White*, 86 Ill. App. 3d at 26.

"Intent to deliver is necessarily proved by circumstantial evidence [citation], and a reasonable inference of intent to deliver narcotics arises from the possession of contraband in excess of any amount that could be designed for personal use." (*People v. Witherspoon* (1991), 216 Ill. App. 3d 323, 333-34, 576 N.E.2d 1030.) This inference can be enhanced by various other factors, such as the seizure of different types of controlled substances, the manner in which they are kept or packaged, the presence of large amounts of cash, the presence of weapons, or the presence of drug paraphernalia. (*People v. Berry* (1990), 198 Ill. App. 3d 24, 28-29, 555 N.E.2d 434.) The inference to be drawn must be determined on a case-by-case basis. *People v. Berry*, 198 Ill. App. 3d at 28.

Defendant contends that the trial court should have allowed the lesser included offense instruction as tendered because the police officers did not actually see defendant deliver any drugs to anyone in the two cars and the amount of heroin and cocaine seized was not so large as to preclude the inference that it was for personal use rather than for sale. We agree.

While the evidence in the present case can give rise to an inference of intent to deliver, when determining whether a lesser included offense instruction should have been given, the issue is whether the evidence could also have supported an inference of mere possession. (*People v. Crenshaw* (1990), 202 Ill. App. 3d 432, 435, 559 N.E.2d 1051.) First of all, we note that neither officer testified that he saw defendant hand any drugs to the occupants of the two cars. While both testified that they saw defendant reach into the cars and that

they saw money in defendant's hand when he withdrew it, neither testified to seeing defendant hand over any drugs. Officer Delaney testified that after defendant's hand emerged with money in it, defendant reached through the window with his other hand. Officer Barnes testified that before defendant's hand emerged with money in it, defendant reached into his pocket and then into the car window with that same hand. Thus, the testimony of the two officers conflicts as to how the alleged delivery occurred. According to either version, however, neither officer actually saw what, if anything, was in defendant's hand when he reached into the car. While the officers testified that, in their opinion, they had witnessed a drug transaction, the jury was not compelled to accept the opinion as being supported by the evidence. See *Clifford-Jacobs Forging Co. v. Industrial Comm'n* (1960), 19 Ill. 2d 236, 242, 166 N.E.2d 582.

In *People v. Valdez* (230 Ill. App. 3d at 985), police officers observed the defendant engaging in suspicious behavior, but did not observe the defendant actually delivering drugs. The court found that, because the officers did not directly observe delivery of the controlled substances, the trial court erred by not instructing the jury on the lesser included offense of possession. *People v. Valdez*, 230 Ill. App. 3d at 986.

In *People v. Crenshaw*, a police officer testified that he saw a passenger enter the defendant's car shortly before the officer and his partner directed defendant to stop the car. (*People v. Crenshaw*, 202 Ill. App. 3d at 433.) When the defendant stopped, he dropped a package to the ground as he left his car. The package contained 11.2 grams of cocaine, divided into 22 smaller packets. An undetermined amount of cash and a weapon were also seized. (*People v. Crenshaw*, 202 Ill. App. 3d at 433-34.) The reviewing court found the packaging of the drugs to be insignificant because "the division of 11.2 grams of cocaine into 22 packets could just as well have been in the form in which the substance was purchased by defendant rather than the form in which it was to be sold." (*People v. Crenshaw*, 202 Ill. App. 3d at 435.) The court also commented that no drug paraphernalia was present. The court found that the lesser included offense instruction should have been given because the amount of cocaine seized was not greater than an amount intended for personal use and, therefore, the evidence could have supported a verdict on the lesser offense of possession. (*People v. Crenshaw*, 202 Ill. App. 3d at 436-37.) The court reduced the conviction for possession with intent to deliver to a conviction for possession of a controlled substance. *People v. Crenshaw*, 202 Ill. App. 3d at 437.

In the present case, the amount of drugs found, .7 grams of her-

oin and 2.9 grams of cocaine, is less than the amount seized in *People v. Crenshaw*. As in that case, the packaging of the cocaine and heroin into smaller packets does not preclude the inference that the drugs were intended for personal use, as they could have been purchased in such packaging. Neither does the relatively small amount of cash found on defendant, $76 (one fifty-dollar bill, one five-dollar bill, and 21 one-dollar bills), preclude such an inference. In fact, all of the cases cited by the State involved sums far in excess of this amount. (See, *e.g.*, *People v. Valdez*, 230 Ill. App. 3d at 986 ($192,800 cash found on premises); *People v. Witherspoon*, 216 Ill. App. 3d at 328 ($1,431 cash found in defendant's pocket); *People v. Friend* (1988), 177 Ill. App. 3d 1002, 1007, 533 N.E.2d 409 ($2,480 cash found in dresser drawer); *People v. Kline* (1976), 41 Ill. App. 3d 261, 264, 354 N.E.2d 46 ($5,650 cash hidden in motor home).) No weapons or drug paraphernalia was seized. Although both cocaine and heroin were seized, the combination of the two drugs in such small quantities would not necessarily compel an inference of an intent to deliver rather than an intent to possess the drugs for personal use.

Although Officer Barnes testified that defendant said he was a worker for a known drug dealer, there was no mention of that admission in the vice case report signed by Officer Delaney, who was present during defendant's conversation with Officer Barnes. In fact, the vice case report quotes defendant as saying that he knew nothing about drug sales in the area. Where the evidence conflicts, it is for the jury to decide whether defendant is guilty of the greater offense or the lesser offense. See *People v. Howard* (1985), 139 Ill. App. 3d 755, 760, 487 N.E.2d 656.

Considering all of these factors, together with the officers' testimony, we conclude that the evidence is such that the jury could have reasonably inferred that the amount seized was not greater than an amount intended for personal use. Therefore, the trial court erred in refusing defendant's request for an instruction on the lesser included offense of possession of a controlled substance.

The State relies on *People v. Valdez* (230 Ill. App. 3d at 986) for its contention that, even if it was error for the trial judge to refuse to instruct the jury on the lesser included offense, such error was harmless. The facts in *People v. Valdez*, however, differ significantly from the present case. In *People v. Valdez*, the police seized 2,940.9 grams of cocaine, 25.1 grams of heroin, $192,800 in cash, and several weapons. Although the court's refusal to give the jury instruction was error because the police had not seen a drug sale, the error was held to be harmless because of the overwhelming inference to be drawn from the substantial quantity of drugs valued at several

million dollars, the extraordinary amount of cash seized, and the presence of other accoutrements of a drug sale including weapons. (*People v. Valdez*, 230 Ill. App. 3d at 986.) The court in *People v. Valdez* stated, "[W]e find it entirely unreasonable to believe the jury would have concluded that defendant had these quantities and values of illegal drugs in his possession for purposes other than the delivery." *People v. Valdez*, 230 Ill. App. 3d at 986.

Unlike *People v. Valdez*, the quantities involved in the present case do not overwhelmingly show an intent to deliver. As previously noted, the quantity of drugs seized in this case is relatively small, .7 grams of heroin and 2.9 grams of cocaine. Although the drugs were packaged in smaller quantities as a seller might package them for sale, their total weight, 3.6 grams, is not sufficient to compel the conclusion that there was an intent to deliver. This is particularly true in view of the fact that no weapons or other accoutrements of drug sale were found and only $76 was found on defendant's person, an amount that would be relatively small in the context of drug-selling activity. While the arrest report contained an alleged statement by defendant that he was a "worker" for Sims and Love, the vice case report indicated contrarily that the defendant and his companion disclaimed any knowledge of drug sales.

Nor does the opinion testimony given by the police officers that what they witnessed were drug transactions change this relatively close balance of the evidence on the question of possession versus intent to deliver. This opinion testimony, given over objection, may well be questioned on the grounds that no expertise is necessary to draw conclusions from the primary facts described. Arguably, this evidence would nevertheless be admissible under the more liberal view which allows expert testimony whenever it will assist the jury in understanding the evidence or determining a fact in issue even though not essential to their comprehension. See *Thacker v. UNR Industries, Inc.* (1992), 151 Ill. 2d 343, 365, 603 N.E.2d 449. See, *e.g.*, *People v. Taylor* (1992), 236 Ill. App. 3d 223, 226, 603 N.E.2d 614 (although not contested on appeal, police officer who had made 90 arrests involving cocaine testified as expert regarding mode of usual cocaine transactions); *People v. Berry* (1990), 198 Ill. App. 3d 24, 26 (although not contested on appeal, two officers qualified as narcotics experts testified that, based on amount of cocaine and cash seized, the defendant was selling drugs); *People v. Jackson* (1986), 145 Ill. App. 3d 626, 633, 495 N.E.2d 1207 (police officers experienced in gang investigations properly allowed to give opinion that defendant was member of a certain gang, as such testimony, being based on more data than available to the average layperson, would be of assistance to the jury).

However, even if admissible, jurors are not compelled to accept an expert's opinion. (See *Clifford-Jacobs Forging Co. v. Industrial Comm'n*, 19 Ill. 2d at 242.) This is particularly true in this instance where the officers did not observe the object allegedly being conveyed. There was also a disparity in the testimony as to what the officers actually did see. One officer testified that there was a two-handed maneuver, while the other said only one hand was used. The testimony also conflicted as to the sequence of events. Officer Delaney testified on direct examination that the money was taken first, placed in defendant's pocket, and then the other hand was placed through the window. Officer Barnes testified that defendant completed the transaction with only one hand and did not place the money in his pocket until he counted it and walked away. The alleged purchasers were not searched for drugs. We also note that neither of the officers remembered any further details regarding the cars or the occupants, nor did they remember whether they transported defendant and his companion to the police station. Consequently, the fact that the officers were permitted to give their opinion testimony does not compensate for the gaps, contradictions, and omissions in the factual underpinnings upon which their opinions were based. Accordingly, for all the foregoing reasons, we cannot agree that the error in failing to instruct the jury on the lesser included offense of possession was harmless.

Since we are remanding for a new trial by reason of the failure to instruct the jury on the lesser included offense, we need not consider the remaining issues raised in this appeal. We note that, even if defendant's contentions were correct on those other issues, remand rather than reversal would be appropriate. However, we comment briefly on the sentencing issues presented since, in the event of conviction after a new trial, this matter will undoubtedly arise again.

■ In *United States v. Stockwell* (9th Cir. 1973), 472 F.2d 1186, *cert. denied* (1973), 411 U.S. 948, 36 L. Ed. 2d 409, 93 S. Ct. 1924, the court stated:

"[C]ourts must not use the sentencing power as a carrot and stick to clear congested calendars, and they must not create an appearance of such a practice.

Accordingly, once it appears in the record that the court has taken a hand in plea bargaining, that a tentative sentence has been discussed, and that a harsher sentence has followed a breakdown in negotiations, the record must show that no improper weight was given to the failure to plead guilty." (*United States v. Stockwell*, 472 F.2d at 1187-88.)

In the present case, the trial judge offered a sentence of 10 years if defendant would plead guilty. There is no explanation as to why the sentence was tripled when defendant was found guilty after choosing to go to trial. While it is not proper for the reviewing court to substitute its own judgment for that of the trial court absent an abuse of discretion (see *People v. Perruquet* (1977), 68 Ill. 2d 149, 156, 368 N.E.2d 882), such an abuse would be found if it were to be shown that the enhanced sentence was in retaliation for rejecting a plea offer. Consequently, if the new trial results in a guilty verdict, the sentencing judge should give proper consideration to the previous sentencing offer, even if he is a different judge who did not participate in the prior plea offer. See *People v. Peddicord* (1980), 85 Ill. App. 3d 414, 421, 407 N.E.2d 89 (sentencing judge must be aware of previous history of case including pretrial plea conference participated in by another judge).

■ We also note that, contrary to the State's contention, defendant's paraplegia may well be considered as a factor in mitigation. (See, *e.g.*, *People v. Luckey* (1975), 35 Ill. App. 3d 179, 182, 341 N.E.2d 112.) Although the trial court nominally acknowledged defendant's paraplegia to be a sentencing factor, we do not necessarily agree with his conclusion that neither that condition nor the shortened life expectancy which accompanies it would have any real bearing on defendant's rehabilitative potential. While defendant's disability, which was apparently sustained subsequent to events of this case, is not a substitute for punishment by the State, it would seem that it should nevertheless be a cogent factor to be considered in determining the length of the sentence. This is particularly true in view of the likelihood that the maintenance of a prisoner in that condition for an extended period of incarceration would necessitate special care and medical attention and would, as a consequence, be exorbitantly expensive.

We note that we are not here attempting to preempt the sentencing process in the event of conviction on retrial except to direct the trial court's attention to these factors among all others to be considered in resentencing.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the case is remanded for a new trial.

Reversed and remanded.

McNULTY and COUSINS, JJ., concur.