THIRD DIVISION
August 8, 2007

No. 1-05-0138

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County. |
| | ) | |
| v. | ) | No. 02 CR 31336-03 |
| | ) | |
| JONATHAN WASHINGTON, | ) | Honorable |
| | ) | Robert M. Smierciak, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE THEIS delivered the opinion of the court:

Following a jury trial, defendant Jonathan Washington was convicted of armed robbery and sentenced to seven years' imprisonment. On appeal, defendant contends that: (1) the trial court committed reversible error when it refused to instruct the jury on the lesser included offense of theft; (2) he was denied his sixth amendment right to effective assistance of counsel where counsel failed to request that the trial court answer a question submitted by the jury during deliberations; and (3) he was denied his right to a fair trial when the prosecutor misstated facts central to the case in closing argument. For the following reasons, we affirm.

Defendant was charged with multiple counts of armed robbery (720 ILCS 5/18-2 (West 2002)), aggravated robbery (720 ILCS 5/18-5 (West 2002)), and robbery (720 ILCS 5/18-1 (West 2002)) in connection with the robbery of Derrius Perry, which occurred shortly after

midnight on November 5, 2002 near 87th Street and California Avenue in Chicago. The following evidence was adduced at defendant's trial.

Derrius Perry testified that after finishing work at the Walgreen's store at 87th and California at midnight, he purchased a bar of soap and a tube of toothpaste, and left the store to walk home. As he was walking south on California Avenue, an individual approached him and asked him directions to King Drive. Perry told him, then resumed his walk, crossing to the other side of the street. The man who had asked him directions followed.

When Perry noticed that he was being followed, he crossed the street again. He also slowed down hoping that the man would pass him. However, when he did, the man approached him, pointed a gun into his ribs, and began taking items from Perry's pockets. Then, two other men approached and began taking things from Perry.

Defendant then exited a tan, four-door Ford vehicle and approached Perry. Someone dropped Perry's wallet. Defendant walked behind Perry and picked it up. Defendant then walked in front of Perry, enabling Perry to see defendant's face. Perry also saw that defendant was holding an knife in his hand. The knife was opened with the blade pointed up at Perry.

Then, someone in the group said, "[l]et's go," and ran to the tan Ford. The men took with them Perry's money and wallet, as well as his sweatshirt and the items he had purchased at Walgreen's. Perry ran back to the Walgreen's and called the police.

Officer Michael Rimkus testified that at 12:20 a.m., he and his partner, Officer Charmaine Kielbasa, received a flash message that a robbery had taken place near 87th and California. The message also indicated that four black male suspects had fled the scene in a tan, four-door Ford.

2

About 20 minutes later, Officers Rimkus and Kielbasa observed a vehicle matching the description with its lights off driving slowly. The officers subsequently pulled the vehicle over, drew their weapons, and ordered three black male occupants out of the car. Defendant was the driver. A search of the car yielded a silver-colored BB gun, a black-handled folding knife, and a hooded sweatshirt.

Officer Adam Zimmer testified that he and his partner, Officer Thomas Ostrowski, went to Perry's home to speak with him about the robbery. The officers then took Perry to the location where Officers Rimkus and Kielbasa had detained defendant and two other men. There, Perry identified his missing sweatshirt. Officer Ostrowski testified that he searched the vehicle a second time and found a Walgreen's bag containing the soap and toothpaste Perry had purchased. The officers took defendant and the two other men to the police station.

At the police station, Assistant State's Attorney (ASA) Barbara Bailey spoke with defendant. He told her that in the early morning hours of November 5, 2002, he was driving around with two friends. One of them indicated that he recognized someone walking down the street, so defendant parked the car, and the two friends got out to meet him. Defendant remained by the car and smoked a cigarette. When defendant next looked over to where his friends were, he saw them "roughing up" the other man, who had a terrified look on his face.

Defendant approached them knowing that "something was wrong," and observed his friends take the man's hooded sweatshirt. Defendant's friends then demanded that the man give them everything he had, and the man complied. The man then gave defendant, who was standing in front of him, his wallet. Defendant's friends next told the man to run away, which he did.

3

Defendant and his friends thus returned to defendant's car and drove away. On cross-examination, ASA Bailey admitted that although defendant agreed to tell her his version of the events that evening, he refused to sign a handwritten statement.

Defendant also testified on his own behalf, relating a somewhat different account of the events on the night in question. He stated that his friends Antonio Thornton and Emanuel Reed came to his house and asked him if he wanted to go out, "ride around," and "holler at some females." Defendant agreed to do so and drove them around the southwest side of Chicago in his aunt's car. They stopped around 87th and California when one of his friends said that he recognized someone. Defendant smoked a cigarette while Reed and Thornton spoke with the man, whom defendant identified as Derrius Perry. However, when Perry removed his sweatshirt on that cold November night, defendant decided to approach them to find out what was going on. When defendant did, Perry, looking scared, said to defendant, "here, you want it?" and started handing things to defendant. Defendant still had his cigarette in his hand; he denied ever having a knife. Defendant tried to catch Perry's wallet, but dropped it. After dropping his cigarette, he picked up the wallet from the ground. Then, Reed and Thornton told Perry to run away, which he did.

Defendant, along with Reed and Thornton, drove to a nearby gas station, where Reed and Thornton went through Perry's wallet. Defendant stated that he forgot to turn on the vehicle's headlights because he was nervous. Defendant did not call the police because he was scared that Reed and Thornton might take his aunt's car.

After the parties rested, the court conducted a jury instruction conference. At that

conference, the defense requested that the jury be instructed on robbery. The State did not object, and the court agreed to give the instruction. The defense also requested that the jury be instructed on the lesser included offense of theft. Defense counsel argued that this instruction was supported by the evidence because defendant was the last person to arrive on the scene and the testimony presented only differed with respect to whether defendant merely picked up Perry's wallet from behind Perry after someone dropped it, or whether Perry threw his wallet to defendant and defendant picked it up. The State responded that the evidence did not support a theft instruction because there were weapons involved in the offense. The State further argued that the offense was not complete until they told Perry to run away; therefore, defendant was a part of an armed robbery. The court ultimately found that the theft instruction was not appropriate under the facts of the case. Accordingly, the court instructed the jury on armed robbery and robbery. The court also instructed the jury on accountability for those two offenses.

During jury deliberations, the jury submitted several notes to the court. One of these notes read:

"Does the commission of a robbery or armed robbery include the get-away?

The law on legally responsible [*sic*] includes the phrase 'before or during the commission of an offense,' but we are unclear when the commission of the offense ends."

After the jury submitted the note, the court held a conference with the parties. However, neither side was able to suggest a definitive response to the question, so the parties agreed that the court

give the jury the following answer:

> "You have heard the evidence and been instructed as to the law – please continue your deliberations."

Shortly thereafter, the jury returned a verdict finding defendant guilty of armed robbery.

Subsequently, defendant filed a motion for a new trial, in which he contended, *inter alia*, that the trial court should have instructed the jury on theft because some of the evidence showed that defendant merely picked up Perry's wallet after it had already been given away. Defendant also claimed that the prosecution deprived him of due process by making speculative and erroneous statements in closing argument. The court denied defendant's motion.

Following a subsequent sentencing hearing, it sentenced defendant to seven years' imprisonment. Defendant then filed this timely appeal.

Defendant first contends that the trial court committed reversible error when it refused to instruct the jury on theft, which he claims is a lesser included offense of robbery. We disagree.

Generally, a defendant cannot be convicted of an offense for which he was never charged. People v. Baldwin, 199 Ill. 2d 1, 6, 764 N.E.2d 1126, 1129 (2002). However, a defendant can be properly convicted of an uncharged offense where: (1) the uncharged offense is identified by the charging instrument as a lesser included offense of the one charged and (2) the evidence adduced at trial rationally supports a conviction of the lesser included offense. Baldwin, 199 Ill. 2d at 6, 764 N.E.2d at 1129.

Regarding the first step, in this case, defendant was charged with armed robbery and robbery. In order to sustain a conviction of robbery, the State must show that defendant took

property "from the person or presence of another by the use of force or by threatening the imminent use of force." 720 ILCS 5/18-1(a) (West 2002). Consistent with that offense, defendant was charged with "knowingly [taking] property, to wit: a wallet, clothes, keys, toothpaste and soap, from the person or presence of Derrius Perry, by the use of force or by threatening the imminent use of force." In order to sustain a conviction of armed robbery, the State must show that defendant committed a robbery while armed with a dangerous weapon. 720 ILCS 5/18-2(a) (West 2002). To that end, defendant was charged with "knowingly [taking] a wallet, clothes, keys, toothpaste and soap from the person or presence of Derrius Perry, by the use of force or by threatening the imminent use of force while armed with a dangerous weapon, to wit: a knife."

Defendant requested that the jury be instructed on theft. In order to sustain a conviction of theft, the State must show that the defendant knowingly "obtain[ed] or extert[ed] unauthorized control over property of the owner." 720 ILCS 5/16-1(a)(1) (West 2002).

The supreme court has found that theft can be a lesser included offense of armed robbery where the conduct and the mental states required for theft are alleged in the armed robbery indictment. People v. Jones, 149 Ill. 2d 288, 295, 595 N.E.2d 1071, 1074 (1992). Here, defendant's indictment for either the armed robbery or robbery charge contained the elements of theft, namely, knowingly obtaining or exerting unauthorized control over Perry's property. Therefore, we find theft to be a lesser included offense of armed robbery and robbery as charged in this case.

Turning to the second step, a defendant is entitled to the lesser included offense

7

1-05-0138

instruction if there is any evidence tending to prove the defendant guilty of the lesser offense rather than the greater, even if that evidence is very slight. People v. Garcia, 188 Ill. 2d 265, 284, 242 N.E.2d 295, 584 (1999). Here, Perry's testimony at trial indicated that while defendant's friend held Perry at gunpoint, defendant, who was brandishing a knife, took Perry's wallet. The police officers testified that they found that knife and a BB gun in defendant's vehicle after they pulled him over. However, defendant's testimony at trial sharply contradicted Perry's version of the events. Defendant denied that he ever had a knife and denied that he or his friends ever used a weapon, force, or the threat of force. Instead, defendant maintained that he approached Perry and his friends to find out why Perry had removed his sweatshirt on a cold November night. Nevertheless, defendant did not deny taking Perry's wallet. Thus, there was evidence presented which, if believed, would have enabled the jury to convict defendant of the lesser included offense of theft but acquit him of armed robbery and robbery. Where, as here, the evidence conflicts, it is for the jury to decide whether the defendant is guilty of the greater offense or the lesser offense. People v. Scott, 256 Ill. App. 3d 844, 852, 628 N.E.2d 456, 462 (1993). Accordingly, the trial court should have instructed the jury on theft.

However, " '[e]ven though error may have been committed in giving or refusing to give an instruction, it will not always justify reversal when the evidence of defendant's guilt is so clear and convincing that the jury could not reasonably have found him not guilty.' " People v. Jones, 81 Ill. 2d 1, 9, 405 N.E.2d 343, 346 (1979), quoting People v. Ward, 32 Ill. 2d 253, 256, 204 N.E.2d 741, 743 (1965); see also People v. Lopez, 245 Ill. App. 3d 41, 45, 614 N.E.2d 329, 332-33 (1993) (discussing Jones). Similarly, where the evidence is sufficient to convict a defendant of the

8

greater offense, it is not reversible error to instruct the jury only as to that offense. People v. Fonville, 158 Ill. App. 3d 676, 685, 511 N.E.2d 1255, 1262 (1987).

The distinguishing element among armed robbery, robbery, and theft is whether force or the threat of force, or a dangerous weapon is employed. See, e.g., Jones, 149 Ill. 2d at 296, 595 N.E.2d at 1075 (discussing elements that distinguish armed robbery and robbery from theft). Put another way, theft is a simple deprivation of property; robbery is a deprivation of property, plus force or the threat of force; and armed robbery is the deprivation of property, plus force or the threat of force, plus the use of a dangerous weapon. 720 ILCS 5/16-1(a)(1) (West 2002); 720 ILCS 5/18-1(a) (West 2002); 720 ILCS 5/18-2(a) (West 2002).

Here, the jury was presented with the option of finding defendant guilty of robbery or armed robbery. In addition, the jury was instructed that defendant could have been found guilty of robbery or armed robbery based on either defendant's own actions or the actions of his friends, for which he was accountable. Ultimately, the jury found defendant guilty of the greater offense of armed robbery. This means that the jury did not believe defendant's version of the incident but, rather, believed the testimony of Perry and the police officers, and found that defendant and/or his friends employed a dangerous weapon and the use of force or the threat of force to deprive Perry of his property. Because the jury found that the State had proven those two elements, it would not have returned a conviction of theft instead of armed robbery if it were presented with that option. Therefore, we find any error in the trial court's refusal to instruct the jury on theft to be harmless. See, e.g., Fonville, 158 Ill. App. 3d at 687, 511 N.E.2d at 1263 (finding that any error in refusing to instruct jury on the lesser included offense of possession of a controlled substance

1-05-0138

was harmless where the evidence was sufficient to show the greater offense of possession with intent to manufacture or deliver a controlled substance).

Defendant next contends that he was denied his sixth amendment right to effective assistance of counsel when his counsel failed to request that the trial court provide an answer to the jury's question regarding whether the commission of the offense included the "get-away." Defendant maintains that the failure to respond left the jury susceptible to the erroneous belief that a get-away was an element of the armed robbery.

A defendant's claim that he has been denied his Sixth Amendment right to effective assistance of counsel is evaluated under the familiar two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Under that standard, a defendant must establish (1) that his attorney's assistance was objectively unreasonable under prevailing professional norms, and (2) that there was a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. People v. Curry, 178 Ill. 2d 509, 519, 687 N.E.2d 877, 882 (1997). Because the defendant must establish both of these prongs, his failure to establish either one is fatal to his claim. People v. Ceja, 204 Ill. 2d 332, 358, 789 N.E.2d 1228, 1245 (2003).

As a general rule, "the trial court has a duty to provide instruction to the jury where it has posed an explicit question or requested clarification on a point of law arising from facts about which there is doubt or confusion." People v. Childs, 159 Ill. 2d 217, 228-29, 636 N.E.2d 534, 539 (1994). However, the trial court may exercise its discretion and properly decline to answer a jury's question where: the instructions are readily understandable and sufficiently explain the

10

relevant law; further instruction would serve no useful purpose or would potentially mislead the jury; the jury's inquiry involves a question of fact; or the giving of an answer would cause the court to express an opinion that would likely direct a verdict one way or another. Childs, 159 Ill. 2d at 228, 636 N.E.2d at 539.

Here, the jury sent a note asking, "Does the commission of a robbery or armed robbery include the get-away?" The jury also cited the court's instruction in it's note, stating "The law on legally responsible [*sic*] includes the phrase 'before or during the commission of an offense,' but we are unclear when the commission of the offense ends." After a hearing, the trial court sent back the response, "You have heard the evidence and been instructed as to the law – please continue your deliberations."

Under these circumstances, we find that defense counsel was not ineffective for failing to request that the court provide a specific answer to the jury's question. The trial judge is not required to answer a jury's question when the jury instructions are explain the point of law in plain language which the average person could understand. People v. Blalock, 239 Ill. App. 3d 830, 842, 607 N.E.2d 645, 653 (1993) (finding no error in court's failure to answer jury's request to define the term "abet" or provide the jury with a dictionary where the instructions explained the concept in plain language). Here, the plain language of the legal responsibility instruction given, which the jury properly cited, is clear that a person can only be legally responsible for the criminal conduct of another where he promotes or facilitates the conduct *before or during* the commission of the offense, not after. Thus, the trial court did not have to respond to the question. As a result, defendant cannot have been prejudiced by defense counsel's failure to request that the trial

11

court provide a specific response.

Defendant's third and final contention on appeal is that he was denied his right to a fair trial when the prosecutor misstated facts that were central to the case in closing argument. Specifically, defendant claims that the prosecutor erroneously stated that defendant pointed a knife at Perry and held the knife to him until the robbery was completed.

We initially observe, as the State correctly notes, that defendant has waived this issue because he never objected to the prosecutor's closing argument. People v. Enoch, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1129 (1988). Nevertheless, defendant encourages us to consider his argument pursuant to the plain error doctrine. "The plain error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." People v. Herron, 215 Ill. 2d 167, 186-87, 830 N.E.2d 467, 479 (2005). In either case, defendant must first show that there was a plain error. Herron, 215 Ill. 2d at 187, 830 N.E.2d at 479. Here, we decline to apply the plain error doctrine because we find no error in the State's remarks.

Defendant faces a substantial burden in attempting to achieve reversal of his conviction based upon improper remarks made during closing argument. People v. Williams, 332 Ill. App. 3d 254, 266, 773 N.E.2d 143, 152 (2002). The State is afforded a great deal of latitude in presenting closing argument and is entitled to argue all reasonable inferences from the evidence. People v. Nieves, 193 Ill. 2d 513, 532-33, 739 N.E.2d 1277, 1286 (2000). Further, improper comments can constitute reversible error only when they engender substantial prejudice against

defendant such that it is impossible to say whether or not a verdict of guilty resulted from those comments. Nieves, 193 Ill. 2d at 533, 739 N.E.2d at 1286.

Here, during his opening closing argument, the prosecutor described defendant's role in the offense in the following way:

"[Defendant] picks up [Perry's] wallet, which has been thrown to the ground as he was being roughed-up by the three individuals who were robbing him at the time. Mr. Washington picks up his wallet, Mr. Washington then produces a knife of his own, points it at [Perry], and holds him at knife point while the robbery is being completed by the other three individuals."

The prosecutor reiterated this characterization of defendant's involvement two more times during the course of his argument.

This is not a misstatement of the evidence. Perry testified that as he was being held at gunpoint and robbed by the other individuals, defendant approached and picked up his wallet. After defendant did so, Perry observed that defendant was holding an open knife with the blade pointed up at him. Perry further testified that he remained held in this manner until the assailants finished robbing him and one of them told him to run away. Thus, the evidence clearly stated that defendant was pointing a knife at Perry and based on the circumstances of the robbery, it was reasonable for the prosecutor to argue that defendant was holding Perry at knife point while one of defendant's friends held the BB gun against Perry. See Nieves, 193 Ill. 2d at 532-33, 739 N.E.2d at 1286 (holding that the State is entitled to argue all reasonable inferences based on the evidence); People v. Calderon, 369 Ill. App. 3d 221, 236, 859 N.E.2d 1163, 1177 (2006) (finding

13

1-05-0138

that it was not improper for prosecutor to argue that a vehicle's lights might have been on because it was late at night and that was a reasonable inference to make). Further, we cannot say that the prosecution's argument here engendered such substantial prejudice against defendant that is impossible to say whether or not the guilty verdict arose from the comment. Therefore, defendant is not entitled to a reversal of his conviction based on the prosecutor's remark.

For these reasons, we affirm defendant's conviction and sentence.

Affirmed.

GREIMAN, J., concurs.

CUNNINGHAM, J., dissents.

14

JUSTICE CUNNINGHAM, dissenting:

I respectfully dissent because I believe that there was ample evidence from which a properly instructed jury could have found defendant guilty of theft rather than armed robbery. The majority finds that the trial court erred in failing to so instruct the jury and that it should have been for the jury to decide whether defendant was guilty of theft or armed robbery. Yet the majority then finds this error to be harmless. I cannot reconcile these holdings. It was prejudicial error requiring reversal and remand for the trial court to refuse to instruct the jury on the offense of theft. The trial evidence pertinent to this issue is as follows.

The victim, Derrius Perry (Perry) testified that as defendant approached the group, defendant pulled a knife out of his wallet. When defendant reached the group, he observed the situation very briefly before Perry's wallet fell to the ground. Perry speculated that one of the other men dropped the wallet. Defendant walked behind Perry to pick up the wallet and then walked back in front of Perry. At trial, Perry testified that the knife's blade was pointed outward and upward at a thirty-degree angle. Perry testified that he was frightened by the gun and the knife. However, upon cross-examination by defendant's counsel, Perry admitted that when he spoke to the police immediately after the incident he did not mention that defendant had a knife.

Officers Michael Rimkus and Charmaine Kielbasa received notice of the incident while on routine patrol in the area of 87th Street and California Avenue. The officers spotted two men walking westbound between Komensky and Karlov Avenues. Because of a recent increase in storefront burglaries, the officers decided to observe the men. The officers then saw a tan Ford Focus without headlights turn westbound onto 63rd Street. The officers noted that the time was

15

12:30 a.m., and the car was moving very slowly. The officers lost sight of the two individuals and the Ford Focus began to pick up speed. The officers followed the vehicle and called the police station. The officers reported that they spotted a vehicle matching the description from the earlier reported incident. The officers continued to follow the vehicle and soon turned on their Mars lights to signal the driver of the vehicle to stop. The Ford Focus stopped at a gas station at 67th Street and Pulaski Avenue

The officers ordered the occupants out of the vehicle one at a time. Defendant was the driver of the vehicle and Thornton and Reed were passengers. A search of the vehicle resulted in the discovery of a knife, a BB gun, the items which Perry had described as purchased from Walgreens, and a sweatshirt. No items were found on defendant's person. Later, Perry was escorted to the gas station by police officers where he identified the three men as the assailants who had taken his possessions earlier. Defendant Washington, Thornton and Reed were then arrested and taken to the Evergreen Park police station. The fourth man who participated in the robbery was never identified or apprehended.

In separate proceedings, Thornton and Reed both pled guilty to aggravated robbery and were sentenced to four years' imprisonment. Defendant was indicted for armed robbery under the theory of accountability.

At trial defendant gave the following testimony. Defendant became acquainted with Thornton and Reed a few weeks before the crime. On the night of the occurrence, Thornton and Reed suggested that the group drive around and "holler at some females." Defendant borrowed his aunt's car and went driving with Thornton and Reed. As they were driving, Thornton told

16

defendant to stop the car because he recognized a man, Perry, walking down the street. Thornton and Reed got out of the car and approached Perry. Defendant also got out of the vehicle to smoke a cigarette. While Thornton and Reed were standing around Perry, defendant observed Perry taking off his sweatshirt. Defendant thought this was peculiar because it was a cold November night. Defendant then walked toward Thornton, Reed and Perry and observed Perry giving Thornton and Reed his personal belongings. As defendant approached the men, Perry asked him, "[h]ere you want this?" and threw an item to defendant. Defendant dropped the first item and then Perry threw defendant his wallet, which he caught. Thornton or Reed then told defendant to run, and the men ran back to the car.

When they entered the car, defendant asked Thornton and Reed what they had just done. Neither man answered the question; they just took Perry's wallet from defendant. Defendant then started the car and drove away, but he was afraid that Thornton and Reed might rob him also and steal his aunt's car. He eventually stopped at a gas station to refuel the car as Thornton and Reed rummaged through Perry's wallet. He drove away from the gas station only to stop again a short time later. He got out of the vehicle to smoke a cigarette and Thornton and Reed also got out and walked down the street. Thornton and Reed eventually returned to the vehicle and the group drove away. Defendant testified that he was so nervous as he was driving that he forgot to turn on his headlights. The police then stopped the vehicle at the gas station where all the occupants were arrested.

At the jury instruction conference, the defense requested that the court give instructions to the jury on the lesser included offenses of robbery and theft. The State objected to the theft

instruction and the court agreed with the State and allowed only the instructions for robbery and armed robbery. The jury was also instructed on the theory of accountability. During the deliberation process, the jury asked the court to clarify whether the commission of robbery and armed robbery included the getaway. The court in agreement with both the State and defense counsel agreed that the response should be "you have heard the evidence and have been instructed as to the law, please continue your deliberations." The judge also denied the jury's request for transcripts of the proceeding. Twice the jury indicated to the judge that they were deadlocked; however, the judge ordered them to continue their deliberations.

After one and one-half days of deliberations, defendant was convicted of armed robbery and sentenced to seven years in the custody of the Illinois Department of Corrections.

At issue is whether defendant was entitled to a jury instruction for the lesser included offense of theft. Defendant argues that the evidence adduced at trial was such that the jury could reasonably have convicted him of the lesser included offense of theft and acquitted him of the greater offense of armed robbery. Therefore, it was error for the trial court to refuse his request for the theft instruction.

Defendant asserts that his trial testimony, in which he told the jury that he had no prior knowledge of the robbery, did not possess a knife, and did not threaten or use force to obtain Perry's wallet, was sufficient to support a theft instruction if the jury believed him. Defendant also claims that the robbery instruction was insufficient to cover the scenario depicted by his testimony if the jury chose to believe him. I agree with this argument, as does the majority. Unlike the majority, I cannot find this error to be harmless.

1-05-0138

The State argues that there is no evidence in the record to support a theft instruction and that no rational jury could have found defendant guilty of theft. But the jury is charged with the responsibility of deciding whom and what to believe. Thus I must disagree with the State's suggestion, that any jury which disagreed with the State's version of the evidence would be acting irrationally. First, the State argues that Perry's testimony is sufficient to support an armed robbery conviction because Perry testified that defendant was armed with a knife. The State points out that the only contradictory evidence to dispute the presence of a knife was defendant's own testimony. The State is clearly implying that defendant's testimony is irrelevant and should have been disregarded by the jury. But again, only the jury should be permitted to make such a determination, not the State or a reviewing court looking at a cold transcript.

Additionally, the State argues that under the theory of accountability, defendant is accountable for the actions of Thornton and Reed. Thornton and Reed's actions qualify as force under the statutory definition of robbery and the BB gun qualifies as a dangerous weapon under the statutory definition of armed robbery. The State claims that this evidence is sufficient to support an instruction for armed robbery or the lesser included offense of robbery. Lastly, the State argues that if the jury had believed defendant's testimony, they would have acquitted him of the crime. In my view this assertion by the State is an oversimplified response to a complex issue which the jury had to resolve.

It is axiomatic that no person may be convicted of an offense that the person has not been charged with committing. People v. Jones, 149 Ill. 2d 288, 293, 595 N.E.2d 1071, 1074 (1992). However, an accused may be convicted of an offense not expressly included in the charging

19

instrument if that offense is a "lesser included offense" of the offense expressly charged. Jones, 149 Ill. 2d at 293, 595 N.E.2d at 1074. An indictment for a particular offense serves as an indictment for all included offenses, even though the latter are not specifically set forth in the indictment. People v. Dressler, 317 Ill. App. 3d. 379, 387, 739 N.E.2d 630, 637 (2000). For the purpose of this rule every element of the lesser offense must be included in the greater offense charged. Dressler, 317 Ill. App. 3d. at 387, 739 N.E.2d at 637. Such a practice provides "an important third option to a jury, which, believing that the defendant is guilty of something but uncertain whether the charged offense has been proved, might otherwise convict rather than acquit the defendant of the greater offense." People v. Hamilton, 179 Ill. 2d 319, 324-25, 688 N.E.2d 1166, 1169 (1997), quoting People v. Bryant, 113 Ill. 2d 497, 502, 499 N.E.2d 413, 415 (1986), citing Keeble v. United States, 412 U.S. 205, 212-13, 93 S. Ct. 1993, 1997-98, 36 L. Ed. 2d 844, 850 (1973).

Where some evidence supports the instruction, the trial court's failure to give the instruction constitutes an abuse of discretion. People v. DiVincenzo, 183 Ill. 2d 239, 249, 700 N.E.2d 981, 987 (1998). Thus one can infer from the trial court's refusal to give the theft instruction, and the State's arguments on appeal, that both the trial court and the State believe that no serious consideration could or should be given by the jury to defendant's version of the facts. This approach intrudes upon the most basic function of a jury under our system of law. In a jury trial, it is the province of the jury to determine whether the defendant is guilty of the greater offense charged or of a lesser included offense. People v. Upton, 230 Ill. App. 3d 365, 377, 595 N.E.2d 56, 63 (1992). Very slight evidence upon a given theory of a case will justify the giving of

20

an instruction. People v. Jones, 175 Ill. 2d 126, 132, 676 N.E.2d 646, 649 (1997). As another court has stated, "It is well settled that where there is even slight evidence in the record which, if believed by a jury, would reduce the crime to a lesser included offense, an instruction defining the lesser included offense should be given." People v. Monroe, 294 Ill. App. 3d 697, 701, 691 N.E.2d 1171, 1173 (1998). Thus the trial court's role is to determine whether there is some evidence supporting that theory; it is not the court's role to weigh the evidence. Jones, 175 Ill. 2d at 132, 676 N.E.2d at 649. There is sufficient evidence to require an instruction if the "evidence would permit a jury rationally to find the defendant guilty of the lesser included offense and acquit him or her of the greater offense," should the instruction be given. People v. Smith, 274 Ill. App. 3d 84, 91, 653 N.E.2d 944, 950 (1995).

Theft, a specific intent offense, is a lesser included offense of the general intent offense of armed robbery. Dressler, 317 Ill. App. 3d. at 388-89, 739 N.E.2d at 638; People v. Jones, 149 Ill. 2d 288, 295-96, 595 N.E.2d 1071, 1074-75 (1992). A person commits theft when he knowingly obtains or exerts unauthorized control over the property of the owner. 720 ILCS 5/16-1(a) (West 2007). A person commits armed robbery when he violates section 18-1 of the Criminal Code of 1961 (720 ILCS 5/18-1 (West 2007)) and carries or is otherwise armed with a dangerous weapon or otherwise armed with a firearm. 720 ILCS 5/18-2(a)(1)(2) (West 2007).

In the instant case, I believe that the trial court abused its discretion by refusing to give a jury instruction for theft. The refusal to give a theft instruction left the jury without a crucial third option by which they could find guilt. As noted above, the supreme court stated in People v. Hamilton that an instruction on a lesser offense provides a third option to a jury which would

21

otherwise have only the choice of convicting a defendant they did not believe to be guilty of the greater offense or acquitting him outright, despite a belief that he was guilty of some offense. Hamilton, 179 Ill. 2d at 324-25, 688 N.E.2d at 1169. That is precisely the situation here. Defendant denied having prior knowledge of the armed robbery, participating in it or having possession of a knife. He also testified that he was fearful of his cohorts after discovering what they had done. However, his testimony still could amount to theft. Although he denied participating in the criminal activity of his cohorts, he admitted to having the victim's wallet in his possession and taking it with him as he returned to the car. Defendant's own testimony put him squarely in the action surrounding the crime. For this reason it is unlikely that a properly instructed jury which had considered all of the evidence would acquit him outright. .

But if the jury chose to believe defendant's testimony, a decision the majority agrees should have been their prerogative, their instructions left them with only two options. The jury could either convict defendant of the greater offense of armed robbery or acquit him of all wrongdoing. Defendant admitted during his testimony that he possessed Perry's wallet. Thus, the jury could reasonably have concluded that acquittal was not an option. Under that scenario there was no instruction which allowed the jury to believe defendant's testimony and find him guilty of an offense other than armed robbery. The majority's opinion seems to find that defendant had the right to an instruction which gave the jury the option of convicting him of theft based upon his testimony, but that being deprived of that right by the trial court's error in refusing that instruction was not prejudicial.

The trial court's instruction on the offense of robbery likewise does not solve the problem.

22

It was neither sufficient nor even appropriate as an option if the jury believed defendant. A person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force. 720 ILCS 5/18-1(a) (West 2007). Although robbery is a lesser included offense of armed robbery, if the jury chose to believe defendant's testimony, no facts presented by the State support a simple robbery conviction. Rather, the evidence supported either armed robbery or theft. Defendant claims he did not have a knife or knowledge that Thornton and Reed were going to rob Perry. If the jury chose to believe the State's evidence and theories, defendant was guilty of armed robbery through his personal use of a knife or through accountability for Thornton and Reed's use of force. Neither of these theories establish the necessary force element of simple robbery because both instances involve a dangerous weapon. The presence of a knife or BB gun satisfies the dangerous weapon requirement for an armed robbery conviction. Thus, no evidence, facts or theory presented by either the State or the defense to the jury supports a simple robbery instruction. Under these facts, theft and armed robbery instructions were the only proper instructions by which the jury could find guilt.

The State erroneously asserts that there is no evidence in the record to support a theft instruction. The State also asserts that Perry's testimony is sufficient to support an armed robbery conviction because Perry testified that defendant was armed with a knife. Although these are two possible theories, they are not the only theories supported by the evidence. And, again, the State's arguments seem to assume that its evidence is the only version which the jury could or should accept. As the finder of fact, the jury must examine the evidence and determine whom and

what to believe. Whether the State agrees or disagrees with the jury's finding, the jury has the right to accept or reject the evidence and the theories presented at trial. Thus, although the State believes it would be irrational for the jury to do so, the jurors could reasonably have rejected the State's theory and evidence and accepted defendant's version of events. Defendant maintained throughout his interrogation and trial testimony that he had no knowledge of the armed robbery plan or the armed robbery itself until after that activity was completed. The testimony given by Assistant State's Attorney Bailey at trial and summarized in the State's brief, outlines the statement made by defendant when he was taken into custody, shortly after the event. It does not differ materially from defendant's own testimony at trial.

For defendant to be found guilty of armed robbery under the theory of accountability, the jury had to find that defendant possessed knowledge of his cohorts actions. An accused may be held accountable for acts performed by another under a common plan or purpose; however, mere presence at the scene of an offense is not sufficient to sustain a conviction on an accountability theory. People v. Jones, 364 Ill. App. 3d 740, 747, 847 N.E.2d 702, 709 (2006). "Evidence that a defendant voluntarily attached himself to a group bent on illegal acts with *knowledge of its design* supports an inference that he shared the common purpose and will sustain his conviction for an offense committed by another." (Emphasis added.) Jones, 364 Ill. App. 3d at 747, 847 N.E.2d at 709. Defendant consistently testified that he had no knowledge of Thornton and Reed's intentions or acts until after they had carried out the crime. This testimony, if accepted by the jury, negates the element of knowledge needed to find defendant guilty of armed robbery under the theory of accountability. The jury had the discretion to accept defendant's testimony

and find that defendant was not culpable for the acts of Thornton and Reed but only for his own act in possessing the wallet. But they were not given appropriate instructions which would have allowed them to decide in favor of this theory or version of events..

Defendant also testified that he was not armed with a knife, and Perry's testimony on this point was impeached at trial. Defendant's testimony also suggests that he was not a part of the criminal activity until after the completion of the crime of armed robbery. He took the victim's wallet and drove Thornton and Reed away from the scene of the crime. Without possession of a knife or prior knowledge of the acts of Thornton and Reed, defendant's actions amounted to theft.

The jury's conduct during deliberations suggests that they did not easily determine defendant's guilt based on the choices they were given. The jury deliberated for one and one-half days although the actual trial lasted less than one day. During the deliberations, the jury requested a transcript of the proceeding and asked the judge if the getaway was part of the crime. The jury notified the judge twice that they were deadlocked and could not reach a decision. The judge instructed the jury to continue deliberating both times, and the jury eventually found the defendant guilty of armed robbery. The jury's inquiry regarding whether the getaway was part of the crime strongly suggests that the jury was considering defendant's version of the facts. The jury's lengthy deliberations also suggest that the evidence was being carefully considered.

I find, as do my colleagues, that the trial court's refusal to submit a theft instruction to the jury under these facts was error. But I cannot find that this error was harmless or did not prejudice the rights of the defendant. The Illinois Supreme Court and this Appellate Court have

held in numerous cases that "a defendant is entitled to an instruction of a lesser included crime if evidence is presented that would permit a jury to rationally find a defendant guilty of the lesser crime yet acquit the defendant of the greater offense." Hamilton, 179 Ill. 2d at 324, 688 N.E.2d at 1169; Jones, 175 Ill. 2d at 135, 676 N.E.2d at 650 ("before a defendant is entitled to a lesser included offense instruction, the trial court must examine the evidence presented and determine if it would "permit a jury rationally to find the defendant guilty of the lesser included offense and acquit him or her of the greater offense," citing People v. Novak, 163 Ill. 2d 93, 108, 643 N.E.2d 762, 771 (1994)). Indeed People v. Smith quoted and applied this holding by the Novak court. Smith, 274 Ill. App. 3d at 91-92, 653 N.E.2d at 950. Our supreme court has also said that only a showing of either slight, any or some evidence is needed to justify the giving of an instruction of a lesser included offense. Jones, 175 Ill. 2d at 132, 676 N.E.2d at 649; People v. DiVincenzo, 183 Ill. 2d 239, 249, 700 N.E.2d 981, 987 (1998) ("we note that an instruction is justified on a lesser offense where there is some evidence to support the giving of the instruction"); People v. Monroe, 294 Ill. App. 3d 697, 701, 691 N.E.2d 1171, 1173 (1998) ("it is well settled that where there is even slight evidence in the record which, if believed by a jury, would reduce the crime to a lesser included offense, an instruction defining the lesser included offense should be given"). Our supreme court further explained in Novak that "[t]his evidentiary requirement is usually satisfied by the presentation of conflicting testimonies on the element that distinguishes the greater offense from the lesser offense." Novak , 163 Ill. 2d at 108, 643 N.E.2d at 771. This distinction is directly applicable to the facts in this case.

As discussed above, the evidence demonstrates that a jury could rationally acquit

defendant of armed robbery but convict him of theft based on his testimony and theory of the crime if they believed him. The conflicting evidence and theories of the State and defendant distinguish the greater offense from the lesser offense. See Novak , 163 Ill. 2d at 108, 643 N.E.2d at 770. The jury should have been given an instruction which would have allowed them to consider all of the options presented by the evidence, not just the State's options. The instructions given by the trial court did not offer the jury that third option. The jury was left to accept the State's evidence or acquit defendant outright. I believe that under the facts and circumstances brought out at trial, acquittal was unlikely. Thus the only real option left to the jury was convicting defendant of armed robbery.

The trial court deprived defendant of the opportunity to be convicted only of the lesser offense of theft on the basis of his trial testimony. The jury was left with no instruction that allowed them to accept defendant's testimony and yet find him guilty of this lesser included offense which was supported by his testimony. The majority fails to explain why, despite their finding that this instruction should have been given, defendant was not prejudiced by the trial court's error in not doing so. Thus, I would find that the trial court's refusal to give a theft instruction constituted an abuse of discretion and reversible error. I would reverse defendant's conviction and remand for a new trial.

**THE PEOPLE OF THE STATE OF ILLINOIS,**

**Plaintiff-Appellee,**

v.

**JONATHAN WASHINGTON,**

**Defendant-Appellant.**

---

**No. 1-05-0138**

**Appellate Court of Illinois**
**First District, Third Division**

**Filed: August 8, 2007**

---

**PRESIDING JUSTICE THEIS delivered the opinion of the court.**

**Greiman, J., concurs, and Cunningham, J., dissents.**

---

**Appeal from the Circuit Court of Cook County**
**Honorable Robert M. Smierciak, Judge Presiding**

---

For APPELLANT,

Michael J. Pelletier, State Appellate Defender
Georgia N. Vagenas, Assistant Appellate Defender
Ann B. McClennan, Assistant Appellate Defender
Office of the State Appellate Defender
203 N. LaSalle St., 24th Floor
Chicago, IL 60601

For APPELLEE,

Richard A. Devine, State's Attorney
James E. Fitzgerald, Assistant State's Attorney
Veronica Calderon Malavia, Assistant State's Attorney
Andrea E. Forsyth, Assistant State's Attorney
300 Richard J. Daley Center
Chicago, IL 60602